IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SERGUEI DANILOV,                )<br>          Plaintiff,                      )<br>                                            )<br>          v.                                 )          Civil Action No. 1:05cv101<br>                                            )<br>EDUARDO AGUIRRE, JR., et al., )<br>          Defendants.                  ) | |

## MEMORANDUM OPINION

In this statutory action, an impatient applicant for naturalization seeks injunctive relief to prod the defendants into (presumably favorable) action with respect to his naturalization application, or in the alternative to have his application adjudicated here. Defendants seek dismissal on jurisdictional grounds and have provided plaintiff with the requisite *Roseboro*[1] notice. Plaintiff has not responded within the allotted time and oral argument is dispensed with as the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid the decisional process. For the reasons that follow, plaintiff's action fails at this time for lack of subject matter jurisdiction.

I.[2]

Plaintiff is a citizen of Russia and a lawful permanent resident of the United States. The

---

[1] *See Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975).

[2] The following recitation of facts is derived from the parties' pleadings and the Declaration of Michael A. Cannon submitted by defendants. Although defendants moved alternatively for judgment on the pleadings or for summary judgment, their motion is appropriately considered and disposed of under Rule 12(h)(3), Fed. R. Civ. P., since the lack of subject matter jurisdiction is apparent from the record. *See Ruhrgas AG v. Marathon Oil Co.* 526 U.S. 574, 583 (1999) (recognizing that subject matter delineations must be policed by courts on their own initiative).

complaint alleges that plaintiff applied for naturalization as a citizen of the United States on February 18, 2003, and that he was thereafter interviewed by officials from the United States Citizenship and Immigration Services (CIS), a division of the Department of Homeland Security (DHS),[3] on or about January 9, 2004. Plaintiff contends this January 2004 interview triggered the running of the statutory 120 day period which must expire before a civil suit seeking judicial review of a pending application for naturalization may be brought under 8 U.S.C. § 1447(b). He thus seeks injunctive relief to require CIS to act on his naturalization petition or in the alternative to have the matter determined here. Defendants disagree, pointing out that the law requires that the Federal Bureau of Investigation (FBI) complete a background investigation of an applicant before the statutorily-required "examination" occurs. In this regard, according to the Declaration of Michael A. Cannon, the Section Chief of the National Name Check Program Section at the FBI, CIS requested that the FBI complete a background investigation on plaintiff on March 7, 2003. This background investigation was subsequently completed on March 23, 2005, at which point it was promptly forwarded to CIS on March 24, 2005. All parties agree that no final action has yet been taken on plaintiff's application for naturalization.

**II.**

Analysis properly begins with 8 U.S.C. § 1447(b), which provides that a district court has jurisdiction to hear suits to compel agency action on a naturalization application or to adjudicate an application "[i]f there is a failure to make a determination under § 1446 of this title before the end of the 120 day period after the date on which the examination is conducted under this section... ."

---

[3] In 2002, Congress abolished the former Immigration and Naturalization Service (INS) and transferred its functions to several successor agencies located largely within the DHS. *See* 8 U.S.C. § 1551, Historical and Statutory Notes.

8 U.S.C. § 1447(b). More specifically, the analysis must focus on the nature and scope of the "examination" required under 8 U.S.C. § 1446. Plaintiff contends that the examination consists of the interview and that the 120 day period thus began to run in his case on January 9, 2004, the date he was interviewed by CIS officials. Defendants, in response, contend that the 120 day period began to run no earlier than March 24, 2005, the date CIS received plaintiff's FBI background investigation. The question presented, therefore, is at what point may it be said that the statutorily-required "examination" is completed so as to trigger the commencement of the 120 day period.

The answer to this question is found in the statute itself, as elucidated in the CIS implementing regulations. To begin with, § 1446(b) makes clear that an examination is not a single event, but instead is essentially a <u>process</u> the agency follows to gather information concerning the applicant. Thus the statute provides that an "examination" may include the issuance of subpoenas to compel the attendance and testimony of witnesses and the production of relevant papers, books and documents and the taking of testimony concerning any matter touching or affecting the admissibility of any applicant for naturalization.[4] 8 U.S.C. § 1446(b). Significantly, Congress, more

---

[4] Specifically, the statute provides, in pertinent part, as follows:

> The Attorney General shall designate employees of the Service to conduct examinations upon applications for naturalization...[and] [f]or such purposes any such employee so designated is authorized to take testimony concerning any matter touching or in any way affecting the admissibility of any applicant for naturalization, to administer oaths, including the oath of the applicant for naturalization, and to require by subpena [sic] the attendance and testimony of witnesses, including applicant, before such employee so designated and the production of relevant books, papers, and documents, and to that end may invoke the aid of any district court of the United States... .

recently, has added another, very important requirement for the examination process: Effective beginning in fiscal year 1998, Congress now requires completion and review of an FBI criminal background investigation of the applicant as part of the examination process. *See* Public Law 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448.[5]  To implement this additional requirement, the responsible agency adopted a regulation requiring that the FBI complete a criminal background investigation of an applicant *before* the examination may be completed. *See* 8 C.F.R. § 335.2.[6]  And, importantly, these regulations are entitled to *Chevron* deference as an authoritative interpretation of the statute unless, as is not true here, it appears from the statute or its legislative history that the

---

8 U.S.C. § 1446(b).

    [5]  That provision provides, in pertinent part, as follows:

> During fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed, except for those exempted by regulation as of January 1, 1997.

Public Law 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448.

    [6] Specifically, the applicable regulation provides, in pertinent part, that the "Service will notify applicants for naturalization to appear...for initial examination on the naturalization application only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." *See* 8 C.F.R. § 335.2. Although at first glance it may appear that CIS violated this regulation by conducting an interview of plaintiff in January 2004 before the required FBI background investigation had been completed, this single interview did not constitute the "initial examination" contemplated by the regulation. Instead, as previously noted, the required "examination" is a process, not an isolated event, which necessarily may include one or more in-person interviews, as well as other activities including (i) the issuance of subpoenas, (ii) the taking of under oath testimony by the applicant and other individuals, and (iii) the production and review of relevant documents. *See* 8 U.S.C. § 1446(b).

agency's interpretation is not one that Congress would have sanctioned.[7]

From this, it follows, as the defendants correctly contend, that the interview of plaintiff that occurred in January 2004 did not end the statutorily-required "examination" and thus trigger the running of the 120 day period, since the interview occurred long before CIS received plaintiff's FBI background investigation. Rather, the January 2004 interview is merely a part of the overall examination process, as is a review of plaintiff's FBI background investigation, and the 120 day period does not begin to run until these and all other aspects of the examination process are completed. In this case, therefore, the 120 day period began to run, at the earliest, on March 24, 2005, the date on which CIS received the FBI background investigation of plaintiff.

Perhaps anticipating this result, plaintiff has sought to invoke two additional potential sources of subject matter jurisdiction in this case by requesting, in the alternative, (i) a motion to compel or for other relief under the Administrative Procedure Act (APA), 5 U.S.C. § 706 *et seq*. or (ii) a petition for a writ of mandamus under 28 U.S.C. § 1361 (providing that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States ro any agency thereof to perform a duty owed to the plaintiff"). Significantly, these additional jurisdictional sources are, at best, general grants of subject matter jurisdiction, in

---

[7] *See Chevron U.S.A. Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837 (1984); *Asika v. Ashcroft*, 362 F.3d 264, 267-70 (4th Cir. 2004) (discussing *Chevron* deference). Under *Chevron*, courts must apply essentially a two-step process in determining whether to give deference to an agency's interpretation of the statutes it was created to enforce. Specifically, a court must first determine whether the applicable statutory language is sufficiently clear such that any alternative agency interpretations must be rejected. If, however, the statutory language is ambiguous, the court must then proceed to step two of the *Chevron* analysis to accept any reasonable agency interpretations of the statute. *See generally* Note, *"How Clear is Clear" in Chevron's Step One?*, 118 HARV. L. REV. 1687 (2005) (discussing *Chevron*).

sharp contrast to the specific grant of subject matter jurisdiction set forth in 8 U.S.C. § 1447(b). In these circumstances, it is well settled that general grants of jurisdiction may not be relied upon to expand a very specific statute that either grants or limits jurisdiction.[8] It follows therefore that plaintiff's invocation of these general grants of subject matter jurisdiction is to no avail and that this matter is controlled by the specific grant of subject matter jurisdiction set forth in 8 U.S.C. § 1447(b).

Moreover, even assuming that the § 1447(b) specific jurisdictional grant does not trump any general statutes, neither of the cited general grants – the APA or mandamus – are applicable in the instant circumstances. The APA permits judicial review of agency action "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Yet here, any delay in the processing of plaintiff's naturalization application was not the result of any inaction or unreasonableness on the part of governing agency; instead, it was the result of the legal requirement that CIS await receipt of the FBI's completed criminal background investigation before acting on plaintiff's application. The mandamus, statute, in turn, only provides a remedy to a plaintiff who has exhausted all other avenues of relief and only then if the defendant owes him a clear, non-discretionary duty. *See Kerr v. United States District Court*, 426 U.S. 394, 402-03 (1976) (recognizing that "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations"). This clearly is not the case here, as CIS did not owe plaintiff a duty to act on his application for naturalization prior to completion and

---

[8] *See United States v. Fausto*, 484 U.S. 439, 448-49 (1988) (providing that where a specific statute both provides subject matter jurisdiction and sets out the conditions under which substantive relief may be available, resort should not be made to the general federal question statute); *Pulido v. Bennett,* 848 F.2d 880 (8th Cir. 1988) (stating that "[i]t is well established that when a statute specifically provides for exclusive jurisdiction in one court, the specific grant of jurisdiction takes precedence over a general grant of jurisdiction") (citations omitted).

receipt of the required FBI criminal background check.

### III.

In sum, since the statutory 120 day period has not yet expired, the conclusion compelled by the instant facts is that there is no subject matter jurisdiction to entertain plaintiff's action at this time. For these reasons, this action must be dismissed for lack of subject matter jurisdiction consistent with Rule 12(h)(3), Fed. R. Civ. P.

An appropriate Order will issue.

/s/
_____

Alexandria, Virginia
May 26, 2005

T. S. Ellis, III
United States District Judge